FILED

2022 Apr-08  PM 03:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**KAMATHI CLISBY,**                )
                                                      )
        **Plaintiff,**                        )
                                                      )          Civil Action Number
**v.**                                            )          **2:21-CV-01147-AKK**
                                                      )
**HP INC.,**                               )
                                                      )
        **Defendant.**                     )
                                                      )

## <u>MEMORANDUM OPINION</u>

After Kamathi Clisby purchased computer equipment from HP Inc., he inquired as to the purportedly erroneous sales tax charged on his purchase. Rather than assisting Clisby, the HP associate with whom Clisby spoke threatened and berated Clisby with racial slurs. Clisby subsequently filed suit against HP, alleging one violation of 42 U.S.C. § 1981 and state-law claims for intentional infliction of emotional distress; "tortious misconduct"; negligence; vicarious liability; and negligent/wanton hiring, training, and supervision/retention for this hateful conduct. *See* doc. 19. He also seeks punitive damages and attorney's fees. *Id.*

Pending before the court is HP's motion to dismiss, in which it contends that the § 1981 claim cannot proceed because Clisby "was not prevented from making the purchase of the computer equipment and had no loss of any actual contractual interest," doc. 23 at 4, and that Clisby fails to plead facts supporting his state-law

claims, *id.* at 8–13.  The motion is briefed, docs. 27; 28, and ripe for resolution.

After considering the pleadings and the briefing,[1] the court finds that the motion,

doc. 23, is due to be granted as to the state-law claims because the complaint fails to

allege facts plausibly demonstrating HP's liability for the alleged torts.

## I.

A pleading must contain "a short and plain statement of the claim showing

that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  This does not require

"detailed factual allegations," but it does demand more than "unadorned"

accusations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007)).  Thus, mere "labels and conclusions" or

"formulaic recitation[s] of the elements of a cause of action" are insufficient.  *Id.*;

*Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012).

---

[1] After HP filed the instant motion, Clisby requested leave to amend his complaint.  *See* doc. 24.
The court denied Clisby's motion, given that he had already thrice amended his complaint,
including once without seeking leave beforehand.  *See* docs. 19; 20; 25.  Clisby then filed a motion
for reconsideration that attached a proposed complaint.  Docs. 26; 26-1.  The factual allegations
and claims in the operative complaint and the proposed complaint are substantially similar and, in
many instances, identical.  *Compare* doc. 19 *with* doc. 26-1.  It appears the proposed complaint
primarily reaffirms that Clisby did not believe HP should have charged him sales tax and that the
HP associate used racial slurs in his conversations with Clisby.  Because Clisby pleads these
allegations in the operative complaint, albeit less clearly, the alterations he seeks to make do not
change the court's analysis.  Thus, the court derives the relevant allegations from the third amended
complaint, doc. 19, and the motion for reconsideration, doc. 26, is due to be denied.  *See Sanzone
v. Hartford Life & Accident Ins. Co.*, 519 F. Supp. 2d 1250, 1255 (S.D. Fla. 2007) ("[A] motion
for reconsideration may be granted based on three major grounds: (1) an intervening change in
controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or
prevent manifest injustice.").

If a complaint fails to state a claim upon which relief can be granted, the court must dismiss it. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient facts, taken as true, to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678; *Resnick*, 693 F.3d at 1325. "Plausibility is the key, as the well-pled allegations must nudge the claim across the line from conceivable to plausible." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (internal quotation marks omitted). A facially plausible claim "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 555 U.S. at 678. The court draws from its "judicial experience and common sense" to resolve this context-specific inquiry. *Id.* at 679; *Resnick*, 693 F.3d at 1324.

## II.

In November 2019, Clisby purchased a computer from HP and then called HP "regarding sales tax on [the] computer that he had just purchased." Doc. 19 at ¶ 6. In the call with an HP associate, Clisby "did not agree with the HP employee on how the sales tax was determined." *Id.* ¶ 7. The HP associate subsequently berated Clisby and threatened his life. *See id.* ¶¶ 9–12.

Over the next two days, the HP associate sent Clisby emails in which the associate threatened to "kick [Clisby's] ass out" and "hold [his] neck and squeeez [sic] it" and called Clisby racial slurs and derogatory words. *See id.* ¶ 11; doc. 19-1

3

at 1.  Fearing for his life, Clisby reported these emails to police in Atlanta, where he was visiting at the time, and to HP's customer relations department.  *See* doc. 19 at ¶¶ 12–13.   HP Customer Relations Manager Jeffery Blanchard subsequently refunded Clisby the cost of the computer equipment.  *Id.* ¶ 14; doc. 19-1 at 2. Although Clisby provided copies of the emails to Blanchard, Clisby alleges that "no other person affiliated with HP has contacted [him]" and that "the employee was still employed by HP and working after the incident."  Doc. 19 at ¶¶ 16–17.  Clisby filed this lawsuit seeking relief for his humiliation, fear, depression, anxiety, and emotional distress.  *Id.* ¶ 18.

## III.

Clisby pleads one violation of 42 U.S.C. § 1981 and state-law claims for intentional infliction of emotional distress; "tortious misconduct"; negligence; vicarious liability; and negligent/wanton hiring, training, and supervision/retention. Doc. 19.  For its part, HP contends that the § 1981 claim must fail because Clisby successfully made his purchase, doc. 23 at 4, and that he does not plead facts supporting the state-law claims, *id.* at 8–13.

### A.

To establish a violation of 42 U.S.C. § 1981,[2] Clisby must ultimately show that (1) he is a "member of a racial minority"; (2) HP "intended to discriminate on

---

[2] Section 1981 provides:

the basis of race"; and (3) "the discrimination concerned one or more of the activities enumerated in the statute." *See Lopez v. Target Corp.*, 676 F.3d 1230, 1233 (11th Cir. 2012); *Kinnon v. Arcoub, Gopman, & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007). Thus, to survive dismissal, Clisby's complaint must contain facts plausibly demonstrating that HP's racial discrimination caused him a contractual injury. *See Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021).

Clisby, who is African American, pleads that an HP associate berated him with racist slurs and threats. *See* doc. 19. HP does not seem to contest that Clisby "is a member of a racial minority" and that the HP associate "intended to discriminate on the basis of [Clisby's] race." *See also Ziyadat*, 3 F.4th at 1296; *Kinnon*, 490 F.3d at 891. Thus, the viability of the § 1981 claim turns on whether Clisby plausibly alleges that he suffered a resulting contractual injury.

1.

Although "there exists scant authority in our [C]ircuit applying § 1981 to claims brought by customers against commercial establishments," *Kinnon*, 490 F.3d

---

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a). The phrase "to make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).

at 891, several instructive cases inform the court's analysis.  The court begins with *Arguello v. Conoco, Inc.*, 330 F.3d 355 (5th Cir. 2003), because the Eleventh Circuit has adopted its reasoning, and *Kinnon*, where the Circuit "articulated the controlling standard for § 1981 claims in the retail context."  *Kinnon*, 490 F.3d at 891; *Lopez*, 676 F.3d at 1233.

In *Arguello*, the Fifth Circuit addressed the § 1981 claims of a father and daughter on their appeal of a judgment as a matter of law.  *See* 330 F.3d at 356. There, a gas-station clerk made racist comments toward the daughter, prompting the father to walk out of the store.  *See id.* at 357.  The Fifth Circuit affirmed the judgment as a matter of law against the plaintiffs, holding that (1) the father "voluntarily" abandoned his purchase following the clerk's mistreatment of his daughter, so the clerk "did not actually interfere with an attempted purchase"; and (2) the daughter "successfully completed her transaction" by ultimately purchasing beverages from the gas station.  *Id.* at 359.  The Fifth Circuit rejected the plaintiffs' "broader interpretation of the § 1981 right to 'make and enforce contracts' on equal terms such that it would cover conduct occurring after the consummation of a retail-sales contract."  *Id.*  Rather, recognizing that § 1981 protected "the opportunity to enter into negotiations on equal terms," the Fifth Circuit noted that "there is no continuing contractual relationship" where "the relationship is based on a single discrete transaction—the purchase of goods."  *Id.* at 360.  The Fifth Circuit also

6

distinguished discrimination in the retail context from "discriminatory service" in restaurants, because dining "generally involves a contractual relationship that continues over the course of the meal and entitles the customer to benefits in addition to the meal purchased." *Id.* at 360–61.

In *Kinnon*, this Circuit held that a plaintiff who ordered food and refused to accept the two-hour-late delivery failed to establish a § 1981 violation after the restaurant manager demanded payment by leaving her racist messages. *See* 490 F.3d at 888, 892. The Circuit noted that the plaintiff initially "successfully entered into a verbal contract . . . for the delivery of pizza, and when the delivery was late, . . . successfully took steps to terminate the contract" by refusing the delivery. *Id.* Although the manager "sought to enforce putative contractual rights against [the plaintiff] at the time the discrimination occurred," the Circuit held this could not support a § 1981 claim because "[the plaintiff] herself was not denied any of the rights enumerated in the statute." *Id.* The Circuit also remarked that, "as in *Arguello,* the discriminatory conduct occurred *after* the contract at issue had been terminated." *Id.*

In *Lopez*, this Circuit rejected a plaintiff's § 1981 claim at the motion-to-dismiss stage after a cashier made racist comments and refused to process the plaintiff's purchases. *See* 676 F.3d at 1231–32. Because the plaintiff "proceeded to a different register, where he was able to purchase his items," the Circuit opined that

7

he successfully completed his transaction, "buying his desired goods at the same price and using the same payment method as any other customer." *Id.* at 1234. The Circuit held that this precluded the plaintiff's claim because he was not "'actually denied the ability to engage in [some] contractual activity' protected by the statute." *See id.* at 1235. The Circuit explained:

> We are not faced here with circumstances where a customer was refused service by the retail store, was required to contract on different terms, got frustrated and left the store, or was in any other way denied the right to make, enforce, or terminate a contract. Fundamentally, [the plaintiff's] claim boils down to the assertion that he was delayed and mistreated during the process of making his purchase. But this allegation, standing alone, cannot establish a § 1981 claim.

*Id.*

In *Middleton v. Wells Fargo Bank, N.A.*, a court in this Circuit concluded that a plaintiff sufficiently pleaded a § 1981 claim after bank employees baselessly claimed her check was fraudulent and declined to cash it. 474 F. Supp. 3d 1290, 1296–97 (N.D. Ga. 2020). The court distinguished *Lopez* by noting that the plaintiff could not complete her transaction because two managers refused her service and asked her to leave while they called the police. *Id.* at 1296. Indeed, "[o]nly after the . . . investigation concluded that the check was not fraudulent, did the defendant, inexplicably, alter course and cash the plaintiff's check." *Id.* at 1297. The court concluded that the bank "thwarted" the plaintiff's first attempt at service and that "[t]he fact that she was successful in her second attempt [was] immaterial." *Id.*

8

Finally, in *Don v. Equinox Brickell, Inc.*, another court in this Circuit declined to dismiss a plaintiff's § 1981 claim where the plaintiff enrolled in a discounted gym membership, but a gym manager denied the plaintiff's attempt to challenge the gym's decision to "unilaterally and discriminatorily terminate[]" his membership contract. *See* No. 20-25322-Civ-Scola, 2021 WL 2453150, at \*1, \*3 (S.D. Fla. June 16, 2021). The court explained that the plaintiff, although able to enter the contract, was unable to enjoy his rights under it because he "was refused the opportunity" to challenge the termination. *Id.* at \*3. The court also remarked that the defendant-gym's arguments, which relied on *Arguello*, *Kinnon*, and *Lopez*, were "premature" at the motion-to-dismiss stage and "[were] better left decided at the summary judgment stage" following the benefit of discovery. *Id.*

## 2.

Upon review of these authorities, the court concludes that Clisby pleads sufficient facts for his § 1981 claim to survive a motion to dismiss. At first blush, HP marshals aspects of the law that suggest that the contractual relationship had ended by the time of the associate's conduct. But several of Clisby's allegations distinguish his claim from those in *Arguello*, *Kinnon*, and *Lopez* and more closely resemble those in *Middleton* and *Don*.

As a preliminary matter, limiting the transaction simply to the initial computer purchase ignores that Clisby allegedly contacted HP to inquire as to the potentially

9

mistaken *terms* of the purchase, the sales tax.   *See* doc. 19.   Construing the allegations in Clisby's favor, he purchased a computer from HP and immediately called HP because he believed the company erroneously charged or miscalculated the sales tax.   The associate prevented him from correcting the purchase amount or learning why HP perhaps improperly charged him sales tax, ostensible components of his contract with the company.   *See* doc. 27 at 3 ("HP charged [Clisby] sales tax[,] and HP would not allow [him] the opportunity to discuss or address same based on the threats and racial slurs directed at [him].").   In other words, Clisby claims his call sought to correct or ascertain the source of an error in his transaction—an inquiry allegedly impeded by the associate who threatened him while using racist epithets.   These contentions plausibly allege that Clisby "was actually denied the ability to engage in [some] contractual activity protected by [§ 1981]."   *See Lopez*, 676 F.3d at 1235.   *See also Don*, 2021 WL 2453150, at *1, *3.

Moreover, this matter comes before the court on HP's motion to dismiss.   It is possible that, with the benefit of discovery, one or both parties will shed light on Clisby's qualm with the sales tax on his purchase or demonstrate that the purchase was subject to non-negotiable sales tax—facts that might bear on HP's § 1981

liability.  At this stage, however, Clisby alleges facts that plausibly indicate HP's interference with his contractual interest as a result of his race under § 1981.[3]

## B.

The court turns now to Clisby's claims under Alabama law.  Before delving into each one, however, the court must frame Clisby's potential bases for liability against HP, because most of his claims are predicated on the allegedly tortious conduct of the associate alone.[4]  Alabama law provides two mechanisms by which an employer can be liable for its employee's acts:

> [An] employer is vicariously liable for acts of its employee that were done for the employer's benefit, i.e., acts done in the line and scope of employment or . . . done for the furtherance of the employer's interest. The employer is directly liable for its own conduct if it authorizes or participates in the employee's acts or ratifies the employee's conduct after it learns of the action.

*Machen v. Childersburg Bancorporation, Inc.*, 761 So. 2d 981, 984–85 (Ala. 1999); *Potts v. BE & K Const. Co.*, 604 So. 2d 398, 400 (Ala. 1992).[5]  With the exception

---

[3] The full refund that HP provided, *see* docs. 23 at 7; 28 at 2, does not negate that the associate allegedly hindered Clisby in correcting or ascertaining the terms of his contract in the first instance. As pleaded, the associate purportedly prevented Clisby from enforcing, terminating, or modifying his contract on the same footing "as is enjoyed by white citizens."  *See* 42 U.S.C. § 1981(a); *Lopez*, 676 F.3d at 1235; *Middleton*, 474 F. Supp. 3d at 1296–97; *Don*, 2021 WL 2453150, at *3. Permitting a company to discriminate and escape § 1981 liability by initiating a refund *after* the customer had suffered the loss of a contractual right would defy the language of the statute.

[4] Curiously, HP sidesteps this issue in its motion, opting instead to meet Clisby's claims on their merits. *See* doc. 23 at 8–13.

[5] Put another way, for an employer to be liable for the intentional torts of its employee, the plaintiff must ultimately show that (1) the employee's wrongful acts "were in the line and scope of his employment," (2) the acts "were in furtherance of the business of [the employer]," or (3) the

of the negligent/wanton hiring, training, and supervision/retention claim, Clisby does not allege HP's direct participation in the conduct that underlies his claims. *See generally* doc. 19.  Rather, Clisby suggests that HP ratified the associate's conduct by failing to terminate him, *see id.* at 5, and that the associate's conduct fell within the scope of his employment, *id.* at 8.  The court describes these theories before turning to the specific tort claims.

"In order to show that [HP] ratified [the associate's] conduct, [Clisby] must show that [HP] either expressly adopted [the associate's] behavior or that it implicitly approved of it." *See Potts*, 604 So. 2d at 400.  To this end, in addition to sufficiently pleading the associate's allegedly tortious conduct, Clisby must allege facts plausibly demonstrating that HP

> (1) had actual knowledge of the tortious conduct of the [associate] and that the tortious conduct was directed at and visited upon [Clisby]; (2) that based upon this knowledge, [HP] knew, or should have known, that such conduct constituted . . . a continuing tort; and (3) that [HP] failed to take 'adequate' steps to remedy the situation.

*See id.*  Clisby pleads facts permitting the plausible inferences that HP knew of the associate's conduct and that it was potentially tortious: Clisby allegedly reported the behavior to HP; spoke with a customer-relations manager, who vowed to investigate it; and received a full refund.  Docs. 19 at 4–5; 19-1 at 2.  The remaining issues are

---

employer "participated in, authorized, or ratified the wrongful acts." *Potts*, 604 So. 2d at 400 (quoting *Joyner v. AAA Cooper Transp.*, 477 So.2d 364, 365 (Ala. 1985)).

whether Clisby sufficiently pleads that the conduct was tortious and whether HP took adequate, "reasonably calculated" steps to stop the behavior, questions that the court addresses in greater depth below.  *See Potts*, 604 So. 2d at 401.

As to vicarious liability, which Clisby pleads as a separate count, doc. 19 at 8, Clisby must allege facts plausibly demonstrating that the associate's conduct "[was] done for [HP's] benefit, i.e., . . . in the line and scope of [the associate's] employment or . . . for the furtherance of [HP's] interest."  *See Potts*, 604 So. 2d at 400.   Generally, where an employer hires an individual to perform a service, "whatever he does to that end, or in furtherance of the employment" is within the scope of the employment.  *See E. Ala. Behavioral Med., P.C. v. Chancey*, 883 So. 2d 162, 167 (Ala. 2003) (quoting *Solmica of Gulf Coast, Inc. v. Braggs*, 232 So. 2d 638, 642–43 (Ala. 1970)).   However, this does not apply to acts "impelled by motives that are wholly personal" or to "gratif[y] [the employee's] own feelings or resentment . . . ."  *Id.*

Applying these principles, the court turns to whether Clisby's complaint pleads plausible tort claims for which HP can be directly or vicariously liable.

## 1.

First, Clisby pleads that the associate's conduct constituted intentional infliction of emotional distress.  *See* doc. 19 at 6.  "[O]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to

another is subject to liability for such emotional distress and for bodily harm resulting from the distress," where the emotional distress is "so severe that no reasonable person could be expected to endure it." *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011). This "extremely limited cause of action" is viable "only when the conduct is 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Id.* at 1173.[6]

Clisby pleads that the associate berated him with racist epithets and threats for several days. *See* doc. 19 at 3. The emails Clisby attaches to his complaint contain grotesque, bigoted insinuations about Clisby's race and nationality, threaten to strangle him, and warn that the associate "will remember [Clisby's] name and find [him]," all while using racial slurs and pejorative language. *See* doc. 19-1 at 1. Upon receiving these emails, Clisby allegedly feared for his life and reported the incident to local police. Doc. 19 at 4. He also asserts that he "experienced humiliation, extreme fear for safety and liberty, depression, extreme anxiety, and emotional distress" as a result of the incident. *Id.* at 5. The alleged conduct therefore exceeded "mere insults, indignities, threats, annoyances, petty oppressions, and other

---

[6] Alabama courts have recognized this tort with respect to three kinds of conduct: "wrongful conduct in the family-burial context," "barbaric methods employed to coerce an insurance settlement," and "egregious sexual harassment." *Id.* at 1172 (quoting *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000)). But the tort can extend beyond these contexts. *Id.* at 1173.

trivialities," *see Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 364–65 (Ala. 1980), and Clisby plausibly pleads that the HP associate committed outrageous behavior.

However, Clisby must plead facts plausibly rendering HP liable for this conduct, directly or vicariously. As to direct liability, Clisby must allege facts permitting the inference that HP ratified the associate's behavior by failing to take "adequate" steps to prevent its reoccurrence. *See Potts*, 601 So. 2d at 400–01.[7] On this front, Clisby pleads that (1) he contacted HP's customer relations department to report the associate, (2) a manager subsequently gave him a refund, (3) the manager "also requested a copy of the emails and told [Clisby] that the incident would be investigated," and (4) the associate "was still employed by HP . . . after the incident." Doc. 19 at 4–5.

These allegations fail to suggest that HP ratified or approved the associate's misconduct. To the contrary, the allegations, if true, demonstrate that HP reviewed the offensive emails and vowed to investigate the conduct, thus taking steps reasonably calculated to prevent the incident from reoccurring. *See Joyner*, 477 So. 2d at 365. That HP allegedly continued to employ the associate, without more, does

---

[7] For example, in *Joyner*, the Supreme Court of Alabama held in favor of an employer who, upon receiving complaints of harassment, conducted a preliminary investigation and informed the alleged offender that it would terminate him and conduct a full investigation if it received another complaint. *See* 477 So. 2d at 365.

not illustrate that HP approved his purported conduct, and Clisby's complaint therefore fails to plead HP's direct liability.  *See id.*

For an employer to be vicariously liable, an employee's outrageous conduct must generally be "perpetrated as a means to further the defendant corporation's business."  *See Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 327 (Ala. 1989) (citing *Levite Undertakers Co. v. Griggs*, 495 So. 2d 63 (Ala. 1986); *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133 (Ala. 1983); *Ridout's-Brown Serv., Inc. v. Holloway*, 397 So. 2d 125 (Ala. 1981)).  By contrast, an employer is not vicariously liable where the employee's purportedly outrageous conduct was aimed purely at personal desires and "no corporate purpose could conceivably be served" by the behavior.  *See id.*

Clisby's complaint cursorily restates certain elements of vicarious liability[8] and does not plead facts from which the court can plausibly infer that the associate acted to further HP's business.  Certainly, the original dispute between Clisby and the associate allegedly began with a disagreement over the calculation of the sales tax on Clisby's purchase, which arguably came within the scope of the associate's

---

[8] The operative complaint reads, in relevant part:

> At the time and place of the incident made basis of this suit, [the] HP employee who berated [Clisby] with racial epithets and threats was acting in the line and scope of this employment . . . . The HP employee was an agent and/or employee of HP. HP was the master or principal of the HP employee. HP is vicariously liable for his actions.

Doc. 19 at 8.  The proposed amended complaint does not allege any additional factual content to support these legal conclusions.  *See* doc. 26-1 at 9.

employment.  However, Clisby does not allege that the associate's racist tirade—which continued after the initial conversation—stemmed from anything other than personal motives.  Given that "[t]he tort of outrage . . . should not be the basis for vicarious or *respondeat superior* liability except in the most compelling circumstances," *Busby*, 551 So. 2d at 327, Clisby's complaint fails to plead facts plausibly demonstrating HP's vicarious liability.

In sum, although Clisby's complaint plausibly states a claim for intentional infliction of emotional distress against the associate, it fails to plead facts suggesting that HP is directly or vicariously liable for that conduct.  Because Clisby sues only HP, this claim is due to be dismissed.

## 2.

Clisby also pleads one count for "tortious misconduct."  Doc. 19 at 6–7.  Allegedly, HP owed a duty to "protect [Clisby] against the use of any discriminatory requirements tending to humiliate, mollify, [or] wound the feelings of [Clisby] and from threats," *id.* at 7, and the associate's "abusive words, threats, and racial slurs" were "grossly negligent, wanton and willful," doc. 27 at 7–8.  However, as HP points out, Clisby does not plead facts or cite law distinguishing this claim from his negligence claim, *see* docs. 23 at 10; 28 at 4, and the court has not located a separate cause of action for "tortious misconduct" in its own research.  *See, e.g.*, *Anthony v. Datcher*, 321 So. 3d 643, 654 (Ala. 2020) (using "tortious misconduct" generally to

refer to two separate claims for negligence and breach of fiduciary duty).  Because Clisby's tortious misconduct claim does not specify a particular tort, it appears to be subsumed within his other claims and is due to be dismissed.

3.

Clisby next pleads a claim for negligence, alleging that HP owed a duty to "properly treat [Clisby] in a reasonable manner" and that HP "breached its duty when it made racial threats, racial slurs and threatened and made [Clisby] fearful for his own life." Doc. 19 at 7–8.

The traditional elements of negligence "are a duty to a foreseeable plaintiff, breach of that duty, causation, and damage." *AALAR, Ltd. v. Francis*, 716 So. 2d 1141, 1144 (Ala. 1998); *Burton v. MAPCO Exp., Inc.*, 47 F. Supp. 3d 1279, 1286 (N.D. Ala. 2014). "A duty of care arises when it is foreseeable that harm may result if care is not exercised." *Hannah v. Gregg, Bland & Berry, Inc.*, 840 So. 2d 839, 857 (Ala. 2002). Alabama law limits the recovery of "mental anguish damages" to plaintiffs sustaining physical injury due to a defendant's negligence or those "who are placed in immediate risk of physical harm by that conduct." [9] *Birmingham Coal*

---

[9] "[F]ear for one's own physical safety" has been "recognized as a discrete element of harm." *AALAR, Ltd.*, 716 So. 2d at 1148. To recover for emotional distress, the plaintiff must ultimately show "not only that 'it was reasonably foreseeable to [the defendant] that [the plaintiff] would be placed at risk of physical injury' but also that '[the plaintiff], in fact, suffered emotional distress.'" *Ex parte Grand Manor, Inc.*, 778 So. 2d 173, 180 (Ala. 2000).

*& Coke Co., Inc. v. Johnson*, 10 So. 3d 993, 999 (Ala. 2008); *Wallace v. SunTrust Mortg., Inc.*, 974 F. Supp. 2d 1358, 1370 (S.D. Ala. 2013).

As HP's customer, Clisby plausibly pleads that the company owed him a duty of care as he transacted for computer equipment and followed up about his purchase. *Cf. Flagstar Enters., Inc. v. Davis*, 709 So. 2d 1132, 1139 (Ala. 1997) (noting that it "[could not] be seriously disputed" that a restaurant owed a duty of care to a customer). But Clisby alleges that HP breached this duty by using racial slurs and threatening his life—conduct of the associate alone. To the extent that Clisby seeks to hold HP liable for its own negligence based on this conduct, this claim might be subsumed within his negligent/wanton hiring, training, and supervision/retention claim. Alternatively, Clisby may be seeking to hold HP vicariously liable for the associate's alleged negligence.[10]

Assuming the latter, the court turns to the associate's alleged negligence. On this point, Clisby claims that the associate's racist slurs and threats breached the duty of care and that this caused Clisby to suffer humiliation, depression, anxiety, distress,

---

[10] The complaint is not a model of clarity on this—or perhaps any—point. While Clisby pleads a count for "respondent [sic] superior," doc. 19 at 8, suggesting that vicarious liability is his preferred theory, his negligence claim states that "*HP breached its duty* when it made racial threats, racial slurs and threatened and made [Clisby] fearful for his own life," *id.* at 7 (emphasis added). Again, this allegation can be reasonably construed to plead a negligent hiring/retention-type claim, given that Clisby essentially states that HP breached a duty of care because of its employee's misconduct. However, for the sake of completeness, and taking the allegations in Clisby's favor, the court also analyzes his claim under theories of HP's potential direct and vicarious liability for the associate's alleged negligence.

and fear.  Doc. 19 at 7–8.  HP, for its part, does not challenge these elements and instead zeroes in on Clisby's alleged damages, arguing that he "was not in any 'zone-of-danger'" because the associate's comments did not create an "immediate risk of physical harm."  Doc. 23 at 11.  However, Clisby allegedly reported the associate's conduct to police out of fear for his safety, and he may not have known where the associate was located, whether the associate had access to his location and identifying information, and how fast the associate could find him.  Thus, HP's argument is unavailing, and Clisby might plead a plausible negligence claim against the associate.

The issue again becomes whether Clisby plausibly alleges that HP is directly liable for ratifying the associate's negligence or vicariously liable because the associate acted in the scope of his employment.  *See Potts*, 604 So. 2d at 400.  But Clisby fails to plead facts plausibly demonstrating that HP ratified the employee's alleged conduct.  In fact, on Clisby's account of the facts, HP vowed to investigate the incident.  *See supra* § III.B.2.[11]  And save for a conclusory statement that the associate "was acting in the line and scope of [his] employment," neither the complaint nor the proposed amended complaint states facts reasonably demonstrating that the associate acted to serve HP's interests when he harassed and

---

[11] Again, that HP purportedly failed to discharge the employee does not establish that it ratified the conduct.  *See Joyner*, 477 So. 2d at 365.

threatened Clisby.  *See* docs. 19 at 8; 26-1 at 9.  *See also supra* § III.B.2.

Accordingly, the negligence claim is due to be dismissed because either it is

subsumed within the negligent/wanton hiring, training, and supervision/retention

claim or it fails to state a claim for which HP can plausibly be liable.

4.

Clisby next alleges that HP negligently and/or wantonly hired, trained,

supervised, and/or retained the associate.  Doc. 19 at 9–10.  "[T]o prove a claim

under Alabama law for negligent/wanton entrustment, negligent hiring, negligent

supervision or negligent retention, a plaintiff must demonstrate that the employer

knew, or in the exercise of ordinary care should have known, that its employee was

incompetent."  *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1288

(N.D. Ala. 2013).  "Wanton," as opposed to negligent, supervision requires "reckless

indifference" to the employee's incompetence.  *See Armstrong Bus. Servs., Inc. v.

AmSouth Bank*, 817 So. 2d 665, 679–80, 682 (Ala. 2001).   To establish

"incompetency," the plaintiff must prove that the employee committed a tort that

caused the plaintiff's injury.  *See Jones Express, Inc. v. Jackson*, 86 So. 3d 298, 304–

05 (Ala. 2010).

Clisby plausibly alleges that the associate committed at least one underlying

tort.  *See supra* §§ III.B.2, III.B.4.  However, he does not plead facts reasonably

suggesting that HP knew or should have known that the associate was incompetent

21

upon hiring him or that it knew or should have known of the associate's incompetence as it trained, supervised, or retained him—much less that HP was recklessly indifferent.  Rather, Clisby pleads that *after* he reported the incident to HP, an HP manager told him the company would investigate, and the company nevertheless continued to employ the associate.  Doc. 19 at 4–5.  These allegations do not suggest that HP negligently or recklessly disregarded the issue once the associate's behavior came to its attention.[12]  Therefore, Clisby does not plausibly allege a negligent or wanton hiring, training, or supervision/retention claim.

## C.

Last, HP briefly argues that Clisby's claims for punitive damages and attorney's fees "cannot be sustained" because "there are no claims pled that state a claim upon which relief can be granted."  Doc. 23 at 13.  Because Clisby plausibly pleads a § 1981 claim, and considering HP's sparse arguments on this point, the court declines to dismiss his requests for fees and punitive damages at this juncture.  *See* 42 U.S.C. § 1988(b) (permitting the recovery of attorney's fees under § 1981); *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 476 (11th Cir. 1999).

---

[12] *See Armstrong Bus. Servs., Inc.*, 817 So. 2d at 683 ("The arguments offered by [the plaintiff] amount to no more than accusations that [an employee] did not handle the loan request properly. [The plaintiff] argues that because [the employee] may have made mistakes, [the defendant corporation] must have negligently or wantonly supervised him. However, these accusations do not amount to proof that [the defendant corporation] was aware of and, negligently or wantonly, disregarded acts of incompetence by [the employee] that damaged [the plaintiff].").

## IV.

In sum, HP's motion to dismiss, doc. 23, is due to be denied as to Clisby's § 1981 claim and his requests for attorney's fees and punitive damages.  In all other respects, the motion is due to be granted.  The court will enter a separate order.

**DONE** the 8th day of April, 2022.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

23